J-A03027-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| CHRISTOPHER B. HAGARMAN | |
| Appellant | No. 929 MDA 2014 |

Appeal from the Judgment of Sentence entered May 19, 2014
In the Court of Common Pleas of Adams County
Criminal Division at No: CP-01-CR-0000515-2013

BEFORE:  MUNDY, STABILE, and FITZGERALD,[*] JJ.

MEMORANDUM BY STABILE, J.:                **FILED MAY 12, 2015**

Appellant, Christopher B. Hagarman, appeals from the judgment of sentence imposed on May 19, 2014 in the Court of Common Pleas of Adams County following his conviction of driving under the influence of alcohol (DUI), general impairment, and DUI, highest rate of alcohol.[1]  Appellant contends the trial court erred in denying a motion to suppress evidence from his traffic stop and argues his acquittal on a summary charge of driving on roadways laned for traffic[2] establishes there was neither probable cause nor

---

[*] Former Justice specially assigned to the Superior Court.

[1] 75 Pa.C.S.A. §§ 3802(a)(1) and 3802(c), respectively.

[2] 75 Pa.C.S.A. § 3309(1).

reasonable suspicion to justify a non-investigative auto stop. We disagree and, therefore, affirm.

The trial court provided the following procedural history:

Appellant's convictions stem from an April 4, 2013 incident in which Corporal Michael Brandtonies of the Pennsylvania State Police stopped Appellant's vehicle upon suspicion of DUI. Appellant filed an [Omnibus] Pre-Trial Motion for Suppression of Evidence and a hearing on the Motion was held on October 21, 2013. This [c]ourt denied Appellant's Motion by Opinion dated November 12, 2013. Following a non-jury trial held on January 7, 2014, this [c]ourt found Appellant guilty of DUI, general impairment, and DUI, highest rate of alcohol, as second offenses for sentencing purposes. This [c]ourt found Appellant not guilty of a summary charge of driving on roadways laned for traffic and an additional count for a seat belt violation was withdrawn by the Commonwealth. On May 19, 2014, Appellant received a sentence of 60 months in the County Intermediate Punishment Program with the first 90 days in a restrictive setting. The DUI, general impairment conviction merged with the highest rate conviction for purposes of sentencing. Appellant filed his Notice of Appeal on June 3, 2014 and thereafter filed a Concise Statement of Matters Complained of on Appeal [p]ursuant to Pa.R.A.P. 1925(b).

In his Concise Statement, Appellant contends that this [c]ourt erred in denying his suppression motion because, contrary to this [c]ourt's prior determination, the arresting officer did not possess reasonable suspicion or probable cause to justify a stop of Appellant's vehicle.

Trial Court 1925(a) Opinion, 7/16/14, at 1-2 (footnote omitted).

In his Statement of Questions Involved pursuant to Pa.R.A.P. 2116, Appellant presents the following issue, provided here verbatim:

Did the Adams County Court of Common Pleas through the denial of Appellant's Suppression Motion of 10/21/14 and the non-jury trial of 1/7/14 use of this illegally obtained evidence resulting in conviction and Judgment of Sentence of 5/19/14, violate the Appellant's Right Against Illegal Search and Seizure,

- 2 -

Right Against Self-Incrimination and Right to Due Process respects of under 4th, 5th and 14th Amendment of U.S. Constitution and Act I, Sections 8 and 9 of Pa. Constitution.

The Appellant alleges that the Commonwealth clearly violated such Rights by denial of such Motion To Suppress evidence resulting from an illegal non-investigate and investigation auto stop, resulting with such derivative resulting evidence being admissible in the Non-Jury Trial of 1/7/14, and being used by the Commonwealth as its main evidence in its case-in-chief. Such Trial ended in conviction of Defendant for the (2) DUI charges and not guilty of the Summary Roadway Violation and resulting in the Judgment of Sentence at issue, after Commonwealth withdrew Seat Belt charge.

Where a particular Amendment or Section of the Federal of State Constitution provides an explicit textual source of Constitution protection against a particular sort of Government behavior (e.g. illegal search and seizure resulting in an illegal arrest) that Amendment or Section – not the generalized notion of substantive process – must be the guide for analysis of a Constitution violation. County of Sacramento v. Lewis 523 U.S. 833 (1998). In case at bar violation of due process based on the illegal search and seizure lending to use of illegally obtained evidence from such seizure leading directly to the Appellant's conviction and therefore violation of due process.

Appellant's Brief at 4.[3]

_____

[3] We are constrained to direct the attention of Appellant's counsel to the Rules of Appellate Procedure, including Rule 2116 and its directive that "[t]he statement of the question involved must state concisely the issues to be resolved, expressed in the terms and circumstances of the case but without unnecessary detail." Pa.R.A.P. 2116. We also remind counsel that Rule 2111(11) requires that the Rule 1925(b) statement of errors complained of on appeal be included in an appellant's brief, not the reproduced record. Finally, we suggest that counsel familiarize himself with proper case citation in accordance with Pa.R.A.P. 2119(b), in particular the citation format for cases from this Court and our Supreme Court.

Our reading of Appellant's statement of questions presented suggests that the underlying issue in this case is whether the trial court erred in denying Appellant's motion to suppress the evidence stemming from the traffic stop that occurred on April 4, 2013, evidence that subsequently resulted in his DUI convictions.

As this Court has recognized, when reviewing the denial of a motion to suppress:

> We are limited to determining whether the lower court's factual findings are supported by the record and whether the legal conclusions drawn therefrom are correct. We may consider the evidence of the witnesses offered by the Commonwealth, as verdict winner, and only so much of the evidence presented by [the] defense that is not contradicted when examined in the context of the record as a whole. We are bound by facts supported by the record and may reverse only if the legal conclusions reached by the court were erroneous.

*Commonwealth v. Feczko*, 10 A.3d 1285, 1287 (Pa. Super. 2010 (*en banc)* (quoting *Commonwealth v. Hughes*, 908 A.2d 924, 927 (Pa. Super. 2006)). Because the defense did not present any evidence at the suppression hearing, we must determine whether the trial court's factual findings are supported by the evidence offered by the Commonwealth's witness, arresting officer Corporal Michael Brandtonies. We are bound by those facts supported by the record and may reverse only if the trial court's legal conclusions are erroneous.

Following the suppression hearing, the trial court issued the following findings of fact:

1. On April 4, 2013, Corporal Michael Brandtonies of the Pennsylvania State Police was on patrol on Pa. Route 116 in Adams County, Pennsylvania.

2. Corporal Brandtonies is an experienced Pennsylvania State Police Trooper with extensive training in DUI enforcement, detection of impaired drivers and detection of persons generally under the influence of alcohol and controlled substances. During the course of Corporal Brandtonies['] career, he has served as a standard field sobriety test instructor and as a drug recognition expert for two years, has completed ARIDE Training, and has extensive experience in DUI enforcement. He has made approximately 400 DUI arrests.

3. In the early morning hours on April 4, 2013, Corporal Brandtonies was in a marked police car following a vehicle operated by [Appellant] on Pa. Route 116.

4. Corporal Brandtonies observed [Appellant's] vehicle cross the fog line repeatedly and continually weave across the centerline. [Appellant's] vehicle was also weaving within his lane of travel. Corporal Brandtonies testified that such driving behaviors may be indicative of an impaired driver.

5. According to Corporal Brandtonies, [Appellant's] vehicle came dangerously close to striking guardrails and mailboxes on the right hand side of the road.

6. Upon initiating the vehicle stop, Corporal Brandtonies encountered [Appellant] and immediately noticed a strong odor of alcohol. He did not observe any signs that alcohol was spilled on [Appellant's] person. He concluded that the strong odor of alcohol was coming from [Appellant's] breath.

7. [Appellant] was the operator of the motor vehicle and the sole occupant of the motor vehicle.

8. Corporal Brandtonies asked [Appellant] two times for [Appellant's] driver's license. [Appellant] exhibited depressed motor skills, had blood shot and glassy eyes and informed the Officer that he had nothing to drink on the evening in question.

9. Based upon his observations, Corporal Brandtonies asked [Appellant] to submit to the standard field sobriety testing. Initially, Corporal Brandtonies, based upon [Appellant's] representation that he had not had anything to drink, asked [Appellant] to submit to HGN Testing in order to detect whether [Appellant] was under the influence of controlled substances. Corporal Brandtonies could not accurately score the test because [Appellant] would not follow the test directions.

10. Corporal Brandtonies then administered the walk and turn test. [Appellant] failed the test as he was unbalanced, stepped left and right of the line, was unable to make heel to toe contact at all, and raised his arms for balance. [Appellant's] performance was so bad that Corporal Brandtonies stopped the test prior to [Appellant's] ninth step.

11. Corporal Brandtonies then administered a portable breath test on an approved, calibrated device. The portable breath test reading was .129%.

12. After Corporal Brandtonies confronted [Appellant] with the result, [Appellant] changed his story and informed Corporal Brandtonies that he had one beer.

13. Based upon the foregoing, Corporal Brandtonies placed [Appellant] under arrest and transported him to Gettysburg Hospital for blood alcohol testing.

Opinion on [Appellant's] Omnibus Pre-Trial Motion, 11/12/13, at 1-3.[4]

_____

[4] In its 1925(a) opinion, the trial court explained that its opinion on Appellant's omnibus pre-trial motion was prepared without benefit of the suppression hearing transcript. Trial Court 1925(a) Opinion, 7/16/14, at 1 n.1. The trial court admitted its error in stating Appellant's vehicle crossed the center line (Findings of Fact at ¶4) and acknowledged the officer testified that Appellant's vehicle did not cross the center line. The court explained, "This error was noted by this [c]ourt at trial and did not change the determination that the stop was lawful in light of the affiant's other observations regarding Appellant's driving behavior." *Id.*

Based on our review of the suppression hearing transcript, we conclude the evidence supports the trial court's findings of fact, with the exception of its erroneous recollection that the officer observed Appellant cross over the centerline of the roadway. In light of the trial court's explanation of that factual misstatement, we accept those findings of fact and examine the trial court's legal conclusions.

In its opinion in support of denying the suppression motion, the trial court explained that section 6308 of the Motor Vehicle Code authorizes a police officer to stop a vehicle if the officer has reasonable suspicion that a provision of the code has been or is being violated. *Id.* at 3 (citing 75 Pa.C.S.A. § 6308(b)). The trial court explained that the underlying offense must be one that is capable of further investigation. *Id.* (citing ***Commonwealth v. Chase***, 960 A.2d 108, 115-16 (Pa. 2008)). Reasonable suspicion is the appropriate standard for DUI, an offense capable of post-stop investigation. *Id.* (citing ***Chase***, 960 A.2d at 116)).

The trial court's inquiry turned to whether Corporal Brandtonies had reasonable suspicion that Appellant was operating a vehicle while impaired. Noting the officer's extensive experience and training in DUI matters, having served as a drug recognition expert and a field sobriety instructor and having made more than 400 DUI arrests, in conjunction with the physical observations to which the officer testified, the trial court concluded the

officer had reasonable suspicion to stop Appellant's vehicle to investigate further whether Appellant was under the influence of alcohol. *Id.* at 4-5.

The trial court then turned its attention to whether, during the stop, Corporal Brandtonies had probable cause to arrest Appellant for DUI. The court looked to 75 Pa.C.S.A. § 3811, which provides in pertinent part:

> [A] police officer is authorized to arrest an individual without a warrant if the officer has probable cause to believe that the individual has violated section . . . 3802 (relating to driving under the influence of alcohol or controlled substance) . . . regardless of whether the alleged violation was committed in the presence of the police officer.

*Id.* at 5. Quoting *Commonwealth v. Angel*, 946 A.2d 115, 118 (Pa. Super. 2006), the trial court noted that "probable cause exists when the officer has knowledge of sufficient facts and circumstances to warrant a prudent person to believe that the driver has been driving under the influence of alcohol." *Id.* The trial court reiterated the officer's observations, including the odor of alcohol emanating from Appellant's vehicle, but the absence of any open containers or spills on Appellant's clothing to account for the odor, along with the officer's report that Appellant failed to produce his driver's license upon the first request, exhibited depressed motor skills and had bloodshot, glassy eyes. *Id.* at 6. In addition, Appellant was unable to follow directions for the HGN test and then failed the walk and turn test. *Id.* When the portable breath test produced a reading of .129%, Appellant admitted to consuming one beer seven hours earlier, even though he initially denied consuming any alcohol in the hours

preceding the traffic stop. *Id.* Cognizant of the fact "[p]robable cause justifying a warrantless arrest is determined by the totality of the circumstances," *Angel*, 946 A.2d at 118, the trial court concluded that Corporal Brandtonies "clearly had probable cause to arrest [Appellant] on suspicion of driving under the influence of alcohol." Opinion on [Appellant's] Omnibus Pre-Trial Motion, 11/12/13, at 6.

As noted above, at the conclusion of Appellant's non-jury trial, the trial court found Appellant guilty of the DUI charges but acquitted him of the summary charge relating to driving on roadways laned for traffic. In his brief, Appellant raises the issue of the acquittal in support of his assertion that "there was no basis for either a <u>non-investigating auto stop</u> based on probable cause because of not staying within the proper lane for traffic, <u>nor</u> a reasonable suspicion of possible DUI for an <u>investigating auto stop</u>." Appellant's Brief, at 16 (emphasis in original).

The trial court addressed that argument in its 1925(a) opinion, stating:

> Appellant argues that this [c]ourt's determination that Appellant was not guilty of the summary vehicle code offense of failing to maintain his vehicle within a single lane of traffic supports his argument that the corporal did not have probable cause to stop him under that provision or reasonable suspicion to suspect that Appellant was driving under the influence of alcohol. However, contrary to Appellant's assertion, Corporal Brandtonies stopped Appellant's vehicle under suspicion of DUI and articulated sufficient facts and circumstances to support his suspicion.

Trial Court 1925(a) Opinion, 7/16/14, at 3-4.[5]

In **Feczko**, this Court considered an appeal from the denial of a motion to suppress evidence of DUI and summarized developments in Pennsylvania law concerning the requisite cause for a traffic stop. **Id.**, 10 A.3d at 1287. The Court explained that the Legislature's 2004 amendments to 75 Pa.C.S.A. § 6308(b) injected a "reasonable suspicion" standard for a traffic stop in place of the former "articulable and reasonable grounds" standard. **Id.** The Court reviewed our Supreme Court's decision in **Chase**, which considered the constitutionality of the reasonable suspicion standard under both the Fourth Amendment and Article I, Section 8 of the Pennsylvania Constitution, and included the Supreme Court's pronouncement that:

> The amendment of § 6308(b) accomplished the elimination of a unique and higher statutory threshold for stops for Vehicle Code offenses; the amendment indicated the legislature did not wish to create a higher standard than that required under the Constitution. That said, one must remember the reason why the Constitution tolerates the lesser standard articulated in [**Terry v. Ohio**, 392 U.S. 1 (1968)]—the detention is allowed to maintain

---

[5] In its 1925(a) opinion, the trial court—with the benefit of the suppression hearing transcript—further amplified its factual findings, noting Corporal Brandtonies' observations of Appellant's vehicle rhythmically weaving from the centerline to the outside edge of the roadway; driving on or over the white fog line on two or three occasions; coming close to striking the guardrail and mailboxes along the side of the road; and moving to the center of the roadway upon negotiating several bends in the road, a behavior the corporal considered atypical; all of which led to the corporal's reasonable suspicion that Appellant was impaired. Trial Court 1925(a) Opinion, 7/16/14, at 3 (citing N.T. Suppression Hearing, 10/21/13, at 8).

the *status quo* so the officer may conduct a brief and safe investigation to see if indeed there is criminal activity afoot. Extensive case law supports the conclusion a vehicle stop for DUI may be based on reasonable suspicion, as a post-stop investigation is normally feasible. However, a vehicle stop based solely on offenses not "investigatable" cannot be justified by a mere reasonable suspicion, because the purposes of a **Terry** stop do not exist—maintaining the status quo while investigating is inapplicable where there is nothing further to investigate. An officer must have probable cause to make a constitutional vehicle stop for such offenses.

**Feczko**, 10 A.3d at 1290 (quoting **Chase**, 960 A.2d. at 115-16).

The trial court applied the holding of **Chase** in its determination that a reasonable suspicion standard applied in Appellant's case and that Corporal Brandtonies articulated specific facts to support his actions in stopping Appellant's vehicle. We find the traffic stop of Appellant's vehicle was legal and that the trial court properly denied the motion to suppress. Because Appellant is not entitled to relief based on any issue presented in this appeal, we affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 5/12/2015